IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 13–cv–01154–KMT

CORY COOPER,

      Plaintiff,

v.

ART DUCHARME, Program Supervisor for Therapeutic Community at San Carlos Correctional
Facility, individual and official capacities, and
DAVE BOOTH, Program Director of Therapeutic Communities for the Colorado Department of
Corrections, individual and official capacities

      Defendants.

---

## ORDER

---

This matter is before the court on Defendants' Motion to Dismiss Plaintiff's Amended

Complaint (Doc. No. 42, filed July 3, 2014), as well as a January 10, 2015 letter sent by Plaintiff,

which the court construes as a motion to appoint counsel (Doc. No. 48, filed Jan. 15, 2015

[hereinafter "Motion to Appoint Counsel"]).  For the following reasons, the Motion to Dismiss is

GRANTED and the Motion to Appoint Counsel is DENIED as moot.

### FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Amended Prisoner Civil Rights Complaint

(Doc. No. 25, filed Oct. 30, 2013 [Am. Compl.]) and the parties briefing with respect to this

Recommendation.  At the time of the events alleged in the Amended Complaint, Plaintiff was an

inmate incarcerated within the Colorado Department of Corrections (CDOC) and was initially

housed at San Carlos Correctional Facility (SCCF).[1]

On July 10, 2012, Plaintiff met with Defendant Art Ducharme, Program Supervisor of the Therapeutic Community program (hereinafter "TC Program") at SCCF, Defendant Dave Booth, Program Director of the TC Program, and other SCCF staff members concerning Defendant Ducharme's alleged threat to terminate Plaintiff from the TC program.  (Compl. at 7.)  Plaintiff was informed by Defendants that there were no plans to terminate Plaintiff from the TC Program and that Plaintiff had nothing to worry about.  (*Id.*)  Plaintiff nevertheless informed Defendant Booth that two days prior, on July 8, 2012, he had a confrontation with Defendant Ducharme about Defendant Ducharme's alleged efforts to prevent Plaintiff from progressing to community corrections at the "Phoenix Center." (*Id.*)  According to Plaintiff, during that conversation, Defendant Ducharme told Plaintiff several times that if he did not conform to Defendant Ducharme's "way," he would be terminated from the TC Program.   (*Id.*)

On July 12, 2012, Plaintiff received a Program Participation Summary that, according to Plaintiff, demonstrates he positively participated in and progressed through the TC Program from January 30 to July 12, 2012.  (*Id.* at 8, Doc. No. 1 [Orig. Compl.], Attach. A.)[2]  Nevertheless, the following day, July 13, 2012, Plaintiff was terminated from the TC Program by Defendant Ducharme and placed into solitary confinement.  (Am. Compl. at 8.)  Four days later, on July 17,

---

[1] Evidently, Plaintiff has since been released on parole.  (Mot. at 1.)

[2] Plaintiff has incorporated all exhibits attached to his Original Complaint into his Amended Complaint.  (Am. Compl. at 7.)  Defendants argue that this incorporation by reference violates Local Rule 15.1(b) and that, as a consequence, the court should not consider these documents. D.C.COLO.LCivR 15.1(b) ("Unless otherwise ordered, the proposed amended pleading shall not incorporate by reference any part of the preceding pleading, including exhibits.").  While Defendants are technically correct, in light of Plaintiff's *pro se* prisoner status, as well as the fact that the documents do not materially impact the court's disposition of Defendants' Motion to Dismiss, the court elects to consider the documents attached to the Original Complaint.

2

2012, Plaintiff's acceptance to the Phoenix Center was revoked.  (*Id.*)

On July 30, 2012, Plaintiff received a CDOC Notice of Charge(s) asserting a disciplinary charge against Plaintiff for "failure to work."  (*Id.*; Orig. Compl., Attach. C.)  The Notice of Charge asserted that Defendant Ducharme had expelled Plaintiff from the TC Program due to a "lack of progress" and because Plaintiff had "remained resistant to treatment attempts in the program."  (Orig. Compl., Attach. C.)  A hearing on the disciplinary charge was set for August 1, 2012.  (*Id.*)  The day of the hearing, however, Plaintiff received notice that the disciplinary charge had been dismissed.  (Am. Compl. at 8.)  Plaintiff was ultimately released from solitary confinement after 19 days.  (*Id.*)

Sometime in early August 2012, Plaintiff was transferred to Buena Vista Correctional Facility (BVCF).[3]  (*See id.*)  On or about August 7, 2012, Plaintiff filed a grievance regarding the fact that his termination from the TC Program was upheld even though the disciplinary charge against him was subsequently dismissed.  (*Id.* at 9.)

On or about August 15, 2012 Plaintiff was placed on "Restrictive Privileges" status at BVCF due to his termination from the TC Program.  (*Id.*)  Defendant Booth also allegedly ordered that Plaintiff be denied credit for the 164 days he spent in the TC Program at SCCF.  (*Id.*)

In September 2012, Plaintiff was placed in a cell with an inmate who had been convicted of murder and was serving three life sentences.  (*Id.*)  Plaintiff alleges that he and that inmate had an unspecified number of physical altercations and that this housing arrangement put him in fear of losing his life.  (*Id.*)

---

[3] The Amended Complaint does not specify when Plaintiff was transferred to BVCF.  However, the court deduces that he was transferred on or before August 7, 2012 because the grievance he filed on August 7, 2012 was received by BVCF staff.  (Am. Compl., Ex. 4 at 2.)

On November 26, 2012, Plaintiff sent Defendant Booth a letter recounting the events that

occurred on and after July 10, 2012 and asking for Defendant Booth's help.  (*Id.* at 9; Ex. 6.)  On

December 7, 2012, after a review of Plaintiff's "Progress Assessment Report" and the disposition

of the July 30, 2012 disciplinary charge, Plaintiff was promoted to "community phase and status"

and was told to anticipate receiving a "certificate of progress" and a "completion of previous

phase."  (*Id.* at 9.)  However, five days later, on December 12, 2012, Defendant Booth allegedly

told a "Mr. Gebhart" not to give Plaintiff his certificate of progress and advised Mr. Gebhart to

demote Plaintiff back into "orientation phase" at Arrowhead Correctional Facility (ACF).  (*Id.*)

On December 20, 2012, it appears that Defendant Booth came to meet Plaintiff at BVCF to

discuss Plaintiff's status in the TC Program.  (*Id.*)  Defendant Booth told Plaintiff that "you Mr.

Cooper, have a bum rap" and advised Plaintiff to "write to Dana Bustos [the Associate Director of

the TC Program] for your objections to the bum rap that Art Ducharme is giving you."  (*Id.*)

Plaintiff wrote a letter to Ms. Bustos requesting that she conduct her own investigation into his

circumstances.  (*Id.*)  Plaintiff did not receive any response from Ms. Bustos.  (*Id.*)

On January 15, 2013, Plaintiff was transferred to ACF.  (*Id.*)  Plaintiff spoke with "Mr.

Romero," the TC Program case manager at ACF, about his past issues and Mr. Romero replied that

he would "check into it."  (*Id.*)  On January 22, 2013, Plaintiff met again with Mr. Romero, as well

as Shane Martin.  (*Id.*)  These individuals asked Plaintiff to sign "another contract."  (*Id.*)  Plaintiff

declined to do so until the inquiry into his "disparate treatment" by TC Program staff was resolved.

(*Id.*)  On January 29, 2012, during another meeting with Mr. Romero and Mr. Martin, Plaintiff was

advised that he would not receive credit for any previous time he spent in the TC Program, and that

Plaintiff would have to sign a new contract to remain "program compliant."  (*Id.* at 10.)  At that

time, Plaintiff reluctantly signed the new contract.  (*Id.*)

## PROCEDURAL HISTORY

Plaintiff initiated this action by filing his original Prisoner Civil Rights Complaint on May 1, 2013.  (*See* Orig. Compl.)  Plaintiff subsequently filed his Amended Complaint on October 30, 2013.  The court initially struck the Amended Complaint because it was served beyond the time for amending the pleadings as a matter of course.  (Minute Order, Doc. No. 26, filed Nov. 5, 2013.) However, on May 15, 2014, the court reconsidered that ruling and reinstated Plaintiff's Amended Complaint. [4]  (Order, Doc. No. 32.)

Plaintiff's Amended Complaint is not a model of clarity.  Nevertheless, in light of Plaintiff's *pro se* status, the court liberally construes Plaintiff's Amended Complaint to assert claims under 42 U.S.C. § 1983 for retaliation in violation of the First Amendment, cruel and unusual punishment in violation the Eight Amendment, and violations of the Fourteenth Amendment's due process and equal protection clauses. [5]  The court also construes Plaintiff's

---

[4] Specifically, the court found that it has misapprehended the relief sought by Plaintiff in his Petition for Extension of Time.  (Doc. No. 22.)  At the time of its decision to strike Plaintiff's Amended Complaint, the court did not construe the Petition for Extension of Time to seek and extension of time to file an amended pleading as a matter of course under Fed. R. Civ. P. 15(a)(1). However, after further review and taking Plaintiff's *pro se* status into consideration, the court concluded that the Petition for Extension of Time did seek an extension of the Rule 15(a)(1) deadline for filing an amended pleading as a matter of course.  (*See* Order, Doc. No. 32.)

[5]     The Amended Complaint also references several criminal statutes.  (Am. Compl. at 3) However, private citizens, like Plaintiff, generally have no standing to institute federal criminal proceedings.  *Winslow v. Romer,* 759 F. Supp. 670, 673 (D. Colo. 1991).

Plaintiff also refers to the Fourth, Fifth, and Sixth Amendments to the United States Constitution.  However, as to the Fourth and Sixth Amendments, there are no allegations in the Amended Complaint regarding an unreasonable search or seizure or improper interference with Defendants rights as a criminal defendant.  *See* U.S. Const. amend IV & VI.  Further, because Plaintiff is a state prisoner, any due process or equal protection challenges must be brought pursuant to the Fourteenth Amendment.  *Rainey v. Boyd,* No. 12-cv-00564-CMA-MEH, 2012 WL

Amended Complaint to assert a claim under the Americans with Disabilities Act, 42 U.S.C. 12131, *et seq.*

After receiving an extension of time to respond to the Amended Complaint after it was reinstated, Defendants' Motion to Dismiss was filed on July 3, 2014. (*See* Mot.) Defendants' Motion argues that Plaintiff's claims should be dismissed under Federal Rule of Civil Procedure 12(b)(1) and (b)(6) for lack of subject matter jurisdiction and failure to state a claim for relief.

Pursuant to D.C.COLO.LCivR 7.1(d) and Fed. R. Civ. P. 6(d), Plaintiff had until July 28, 2014 to file a response. No response was filed on or before that date. In his Motion to Appoint Counsel, filed January 15, 2015, Plaintiff requests that the court consider allowing him time to receive court-appointed or pro bono counsel because "he had no way to research or respond" to Defendant's motion to dismiss. (Mot. Appt. Counsel.)

To the extent the Motion to Appoint Counsel can be construed to seek an extension of time to respond to the Motion to Dismiss, it is denied. Plaintiff filed this letter more than 190 days after Defendants' Motion to Dismiss was filed, and more than 165 days after his response was due. Plaintiff's letter does not explain why Plaintiff waited so long after his response deadline to seek an extension of time. As such, the court finds that Plaintiff has failed to show the excusable neglect necessary to obtain an extension of time to respond. *See* Fed. R. Civ. P. 6(b)(1)(B).

---

3778356, at *1 n.2 (D. Colo. Aug. 15, 2012) *recommendation adopted at* 2012 WL 3778351 (D. Colo. Aug. 31, 2012).

# LEGAL STANDARD

### A.   Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

### B.   *Lack of Subject Matter Jurisdiction*

Fed. R. Civ. P. 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the

complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

**C.     *Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Bellmon*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 678-80. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citation omitted).

## ANALYSIS

### A.    *Eleventh Amendment Immunity*

Plaintiff's Amended Complaint names Defendants in both their individual and official capacities. Defendants argue that Plaintiff's § 1983 claims for money damages against Defendants in their official capacity are barred by Eleventh Amendment immunity. The court agrees.

The Eleventh Amendment to the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It has been interpreted to bar a suit by a citizen against the citizen's own state in federal court. *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995). Suits against state officials in their official capacity should be treated as suits against the

10

state.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  This is because a suit against a state official in his or her official capacity is a suit against the official's office and therefore is no different from a suit against the state itself.  *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989).  The Eleventh Amendment thus shields state officials, acting in their official capacities, from claims for monetary relief.  *See Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007).

Moreover, a § 1983 action may only be brought against a person.  *See* 42 U.S.C. § 1983. Neither states nor state officers sued in their official capacity for monetary damages are persons within the meaning of § 1983.  *Will*, 491 U.S. at 70–71.

Plaintiff's claims for monetary relief against Defendants in their official capacities constitute claims against the CDOC.  *Will,* 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office").  Therefore, Plaintiff's official-capacity claims for monetary relief against Defendants are barred by the Eleventh Amendment and therefore dismissed for lack of subject matter jurisdiction.

**B.**     ***Equal Protection Claim***

Defendants argue that Plaintiff's equal protection claim should be dismissed because Plaintiff does not allege he was treated differently from other similarly situated CDOC inmates. The court agrees.

The Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "[A]n equal protection violation occurs when the government treats someone differently than another who is similarly situated."  *Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th

11

Cir. 1996) (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985)).  "'Unless it provokes strict judicial scrutiny, a state practice that distinguishes among classes of people will typically survive an equal protection attack so long as the challenged classification is rationally related to a legitimate government purpose.'"  *Vasquez v. Cooper,* 862 F.2d 250, 251-52 (10th Cir. 1996).  "Strict judicial scrutiny is appropriate only when the classification involves a suspect class or interferes with a fundamental right."  *Riddle v. Mondragon,* 83 F.3d 1197, 1207 (10th Cir. 1996) (citing *Vasquez,* 862 F.2d at 252).

Here, Plaintiff does not allege that he was disparately treated based on his membership in a suspect class, such as his race or ethnicity.[6]  Instead, Plaintiff's allegations are based on the fact that he was (1) terminated from the TC Program when other inmates similarly situated to him were not and (2) placed into solitary confinement without a disciplinary conviction when other inmates were not.  (Am. Compl. at 11, 15.)

Although Plaintiff's equal protection claim is not based on his membership in a suspect class, the Supreme Court has recognized a "class of one" equal protection claim "where the plaintiff alleges [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech,* 528

_____

[6] Plaintiff does allege that Defendant Ducharme made the following "racial innuendo" during his July 8, 2012 discussion with Plaintiff:  "Wow, I can't believe your arrogance in believing you'll get any program you think you want . . . all *you people* are the same, always expecting something out of the system, when in fact, you're only here to pay for your crime."  (Am. Compl. at 8) (emphasis added).  However, in light of the remainder of his statement, is far from clear that Defendant Ducharme's alleged reference to "you people" was based on Plaintiff's race or ethnicity.  Moreover, Plaintiff does not identify his race at any point in the Amended Complaint, nor does he allege that similarly situated inmates of other races or ethnicities were treated differently from him.

U.S. 562, 564 (2000) (per curiam) (citation omitted).  However, to assert a viable equal protection

claim, plaintiff[] must first make a threshold showing that [he was] treated differently from others

who were similarly situated to [him]." *Brown v. Montoya,* 662 F.3d 1152, 1172-73 (10th Cir.

2011).  "This element is especially important in class of one cases." *Jennings v. City of Stillwater,*

383 F.3d 1199, 1213 (10th Cir. 2004) (citation omitted); *see also Jicarilla Apache Nation v. Rio*

*Arriba Cnty.,* 440 F.3d 1202, 1213 (10th Cir. 2006) ("courts have imposed exacting burdens on

plaintiffs to demonstrate similarity in class-of-one cases.").

 Here, Plaintiff has not identified any other inmates who were treated more favorably under

identical or substantially similar circumstances to those he faced.  Instead, he sets forth only

conclusory allegations that he was "disparately treated from other inmates similarly situated in the

T.C. program" when he was terminated from the TC Program (Am. Compl. at 9, 12; *see also id.* at

10) and that he was treated in an "unequal and discriminatory manner comparable to that of other

similarly situated inmates who do not go to punitive segregation unless they commit a conduct

violation" (*id.* at 11; *see also id.* at 12).  These allegations are insufficient to plausibly establish the

similarly-situated element of an equal protection claim.  *See Jicarilla Apache Nation,* 440 F.3d at

1213.  Accordingly, the court finds that Plaintiff fails to state a viable claim under the equal

protection clause.

## C. *Retaliation Claim*

 Plaintiff alleges that Defendants violated his First Amendment right to be free from

retaliation by terminating him from the TC Program and placing him in solitary confinement.

Defendants argue that Plaintiff's retaliation claim should be dismissed because Plaintiff's

allegations fail to establish that he was engaged in constitutionally protected activity.  The court agrees.

It is well settled that "'[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his' constitutional rights." *Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir. 1998) (quoting *Smith v. Maschner,* 899 F.2d 940, 947 (10th Cir. 1990)).  To state a First Amendment retaliation claim, a plaintiff must allege that (1) he was engaged in constitutionally protected activity; (2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the defendants' adverse actions were substantially motivated by the plaintiff's protected activity.  *Allen v. Avance,* 491 F. App'x 1, 6 (10th Cir. 2012) (citing *Shero v. City of Grove,* 510 F.3d 1196, 1203 (10th Cir. 2007)).

As to the first element, prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts.  *Maschner,* 899 F.2d at 947.  Because a prisoner must first file administrative grievances in order to ultimately gain access to courts, 42 U.S.C. § 1997e, punishing him for actually filing such grievances may state a claim for retaliation under the First Amendment.  *Purkey v. Green,* 28 F. App'x 736, 745-46 (10th Cir. 2001); *Allen,* 491 F. App'x at 5 (citing *Williams v. Meese,* 926 F.2d 994, 998 (10th Cir. 1991) ("we have found that officials may not retaliate against prisoners for filing administrative grievances.").

Here, it does not appear that Plaintiff filed any administrative grievances prior to his termination from the TC Program and placement in solitary confinement.  Instead, Plaintiff alleges only that he exercised his right to an "oral/verbal redress of grievance to Mr. Ducharme on July 10,

14

2012." (Am. Compl. at 11.)  However, it does not appear that this allegation refers to a formal administrative grievance filed by Plaintiff; instead it appears to refer to the July 10, 2012 meeting between Plaintiff and Defendant Ducharme, Defendant Booth, and other SCCF staff members. Plaintiff does not allege, nor does it otherwise appear, that this meeting was somehow a prerequisite to gaining access to the courts, as is the case with an administrative grievance.  Indeed, at the time of the July 10, 2012 meeting, no formal action had been taken against Plaintiff—he had not yet been terminated from the TC Program or placed into solitary confinement.  As such, the court finds that Plaintiff's participation in the July 10, 2012 meeting did not constitute constitutionally protected activity.

Plaintiff did file a set of administrative grievances beginning on August 7, 2012.  (*See* Am. Compl., Ex. 4.)  However, plainly, the filing of these grievances was not the cause of Plaintiff's termination from the TC Program and placement in solitary confinement as the grievances were filed *after* these adverse actions.  *Peterson,* 149 F.3d at 1144 (a § 1983 retaliation claim is governed by a strict standard of causation which requires a plaintiff to show that "but for" a retaliatory motive, the adverse action(s) to which he refers would not have taken place).

Plaintiff does allege that he suffered additional adverse actions after arriving at BVCF, including being placed on Restrictive Privileges status, being denied credit for the 164 days he spent in the TC Program at SCCF, and being placed in a cell with a convicted murderer.  However, the first two actions appear to be natural consequences of his prior termination from the TC Program and placement in solitary confinement, and the last action appears to be a normal condition of confinement.  *See Peterson,* 149 F.3d at 1144 ("Obviously, an inmate is not

15

inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity.").

More importantly, Plaintiff does not sufficiently allege that the defendants in this action took these actions because Plaintiff filed grievances.  First, Plaintiff does not allege that either Defendant Booth or Defendant Ducharme were in any way involved in the decisions to put Plaintiff on Restricted Privileges status or to place Plaintiff in a cell with the convicted murderer.  Further, although Plaintiff alleges that Defendant Booth gave the order to deny Plaintiff credit for the 164 days he spent in the TC Program at SCCF, Plaintiff does not allege facts showing that Defendant Booth knew Plaintiff had filed grievances beginning on August 7, 2012.  *See Handy v. Cummings,* No. 11-cv-00581-WYD-KMT, 2013 WL 1222415, at *13 (D. Colo. Mar. 25, 2013) (finding that the causation element of a retaliation claim was not met when there was no evidence that the defendant knew that the plaintiff had filed grievances).  Further, because each grievance was received at BVCF, rather than at SCCF, the court cannot reasonably infer that Defendant Booth knew of those grievances.

Accordingly, the court finds that Plaintiff fails to state a claim for retaliation.  Accordingly, Plaintiff's retaliation claim will be dismissed.

### D.     *Eighth Amendment Claim*

Plaintiff alleges that Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment by the loss in privileges he suffered as a result of being terminated from the TC Program and being placed in solitary confinement for 19 days.

16

Defendants argue that the alleged conditions of Plaintiff's confinement in solitary confinement are not sufficiently serious to implicate the Eighth Amendment. The court agrees.

"To prevail on a 'conditions of confinement' claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is 'sufficiently serious' to implicate constitutional protection, and (2) prison officials acted with 'deliberate indifference to inmate health or safety.'" *Reynolds v. Powell*, 370 F.3d 1028, 1031-1032 (10th Cir. 2004) (quoting *Farmer*, 511 U.S. 825, 834 (1994)). The question of the defendant's culpability is subjective, but whether the condition complained of is sufficiently serious is evaluated on an objective basis. *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998).

As to the objective component, Plaintiff alleges that during his placement in solitary confinement, he was confined for 23 hours a day; deprived of most of his property; and prevented from working, denied access to library, not allowed to attend drug and alcohol and behavioral medication classes, denied outdoor recreation with other inmates, and not allowed to attend meals with other inmates. (Am. Compl. at 16-17.) The court finds that these allegations do not rise to the level of a sufficiently serious deprivation. *Trujillo v. Williams,* 465 F.3d 1210, 1225 n.17 (10th Cir. 2006) (allegations of limited access to education, employment, religious programming, housing assignment, recreation time and equipment, the telephone, and the commissary did not establish a sufficient serious deprivation); *Smith v. Romer,* 107 F.3d 21, 1997 WL 57093, at *2 (10th Cir. Feb. 11, 1997) (unpublished table opinion) (allegations of confinement for twenty-three hours per day, meals in cells, limited vocational, educational, and recreational services, exercise of one hour per day in cell, lights that did not turn off, and unsanitary shower stalls did not state a

17

sufficiently serious deprivation for Eighth Amendment purposes).  While prisons must provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from bodily harm, *see Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir.2008), "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations and quotation marks omitted).  Therefore, in the absence "of a specific deprivation of a human need, an Eighth Amendment claim based on prison conditions must fail."  *Shifrin v. Fields*, 39 F.3d 1112, 1114 (10th Cir.1994); *see also Tafoya,* 516 F.3d at 916; *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (The objective component of a "conditions of confinement" claim requires that the objectionable conditions be sufficiently serious so as to "deprive inmates of the minimal civilized measure of life's necessities.").

Plaintiff's allegations do not demonstrate that he was deprived of a basic human need, nor can the alleged conditions of Plaintiff's confinement be described as extreme.  *Barney v. Pulsipher*, 143 F.3d 1229, 1311 (10th Cir.1998) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (prison conditions may be "'restrictive and even harsh'" without violating constitutional rights).  Further, Plaintiff admits that he endured these conditions for only 19 days and the court finds that the conditions did not pose a risk to Plaintiff's health or safety.  *Whitington v. Ortiz,* 307 F. App'x 179, 189 (10th Cir. 2009) ("Mere discomfort or temporary adverse conditions which pose no risk to health and safety do not implicate the Eighth Amendment.").  Accordingly, the court finds that Plaintiff fails to state a claim under the Eighth Amendment.

**E.**     *Due Process Claim*

Plaintiff alleges that Defendants violated his due process rights by terminating him from the TC Program; placing him in solitary confinement; transferring him to BVCF, a more restrictive facility; and denying him credit for the 164 days he spent in the TC Program without a hearing. (Am. Compl. at 10.)  Defendants argue that Plaintiff fails to state a due process claim because he did not have a liberty interest in avoiding any of this treatment.  The court agrees.

"The Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.'" *Estate of DiMarco v. Wyo. Dep't of Corrs.*, 473 F.3d 1334, 1339 (10th Cir. 2007) (quoting U.S. Const. Amend. XIV). "A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citation omitted). "In determining whether an individual has been deprived of his right to procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process." *Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001) (citation omitted).

"The first issue in the due-process context is whether the plaintiff has established a protected interest (in this case a liberty interest)." *Toevs v. Reid*, 685 F.3d 903, 910-11 (10th Cir.2011) (citations omitted).  While the Fourteenth Amendment due process guarantee applies to prison inmates, "their due process rights are defined more narrowly." *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir.2005).  "The Due Process Clause itself does not give rise to a liberty interest

in avoiding transfer to more adverse conditions of confinement." *Toevs*, 685 F.3d at 911 (internal

quotation marks and citation omitted).  In the prison context, the Supreme Court has established

that protected liberty interests are "generally limited to freedom from restraint which, while not

exceeding the sentence in such an unexpected manner as to give rise to protection by the Due

Process Clause of its own force, nonetheless imposes atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484

(1995).  Whether confinement "conditions impose such an atypical and significant hardship that a

liberty interest exists is a legal determination." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir.1997)

(citing *Sandin*, 515 U.S. at 485–87).

The court first finds that Plaintiff did not possess a protected liberty interest in participating

in the TC Program.  "Federal courts have consistently found that prisoners have no constitutionally

protected liberty interest in prison vocational, rehabilitation, and educational programs based on

the Fourteenth Amendment." *Washington v. Borejon,* 324 F. App'x 741, 741 (10th Cir. 2009)

("The ability to participate in a rehabilitative prison program clearly does not implicate life or

property interests."); *see also Grady v. Garcia,* No. 10-cv-00347-PAB-CBS, 2012 WL 1044491,

at *8 (D. Colo. Mar. 27, 2012) (specifically finding that the plaintiff did not have a protected

liberty interest in participating in the TC Program.)  The court also finds that Plaintiff did not have

a protected interest in avoiding placement on Restricted Privileges status as a result of his

termination from the TC Program.  *Rocha v. Zavaras,* No. 10-cv-01272-PAB-KMT, 2011 WL

805758, at *2 (D. Colo. Feb. 28, 2011) (plaintiff's placement in the [Restricted Privileges] Unit

without a hearing did not support a procedural due process claim where complaint lacked any

allegations that RP status imposed atypical and significant hardship in relation to the ordinary incidents of prison life); *Grady,*2012 WL 1044491, at *8 (loss of privileges and automatic reclassification as a result of termination from TC Program did not give rise to a liberty interest).

Similarly, the court finds that Plaintiff did not have a liberty interest in retaining "credit" for the 164 days he spent in the TC Program.  Inmates must be afforded due process before their good time credits can be revoked.  *Wolff v. McDonnell,* 418 U.S. 539, 557(1974); *Howard v. Bureau of Prisons,* 487 F.3d 808, 812 (10th Cir. 2007).

Here, however, Plaintiff does not allege that he had earned time or good time credits revoked.  Instead, he alleges that he was denied credit for the 164 days of attendance in the TC program, which can *result* in earned time credits.  (Am. Comp. at 16.)  Colorado law does not furnish a right to *earn* good-time credits and expressly permits the denial of such a right.  *See* Colo Rev. Stat. § 17-22.5-301(4) ("[n]othing in this section shall be so construed as to prevent the department from withholding good time earnable in subsequent periods of sentence, but not yet earned, for conduct occurring in a given period of sentence."); *Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006) (applying Colo. Rev. Stat. § 17–22.5–302(1)); *Anderson v. Cunningham*, 319 F. App'x 706, 710 (10th Cir. 2009) ("Because under Colorado law good time credits are discretionary, [plaintiff] does not have a protected interest in earning good time credits") (internal quotation marks and citation omitted).  Further, although Plaintiff alleges that he was awarded some earned time credit as a result of his participation in the TC Program (Am. Compl. at 16), he does not allege that those earned time credits were revoked retroactively.

Finally, the court finds that Plaintiff did not have a protected liberty interest in avoiding solitary confinement or being transferred to BVCF.  As previously mentioned, "[t]he Due Process Clause itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."  *Toevs,* 685 F.3d at 911 (internal quotation marks and citation omitted).  The Tenth Circuit has applied several factors in analyzing whether conditions of confinement impose such an atypical and significant hardship that a liberty interest exists.  These factors include whether "(1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation . . .; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement; and (4) the placement is indeterminate."  *Estate of DiMarco*, 473 F.3d at 1342.  "[A]ny assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts."  *Id.*

The court finds that the first *DiMarco* factor is neutral.  Plaintiff was terminated from the TC Program, placed in solitary confinement, and subsequently transferred to BVCF because he was "resistive to treatment attempts in the program" and because he exhibited "argumentative behavior toward [his] peers, disrespectfulness to staff and [was] disruptive while in the program." (Orig. Compl., Attach. C; Am. Compl., Ex. 5.)  However, Plaintiff disputes this characterization of his behavior and the disciplinary charge against him for that behavior was ultimately dismissed.

As to the second factor, outside of his placement on Restricted Privileges status, which is insufficient to establish a liberty interest, Plaintiff does not describe any of the conditions of his confinement at BVCF.  Additionally, as discussed above with respect to Plaintiff's Eighth

Amendment claim, the court does not find that the conditions of his solitary confinement were extreme.

As to the third factor, Plaintiff maintains that being denied credit for the 164 days in the TC Program increased the duration of his sentence because they could have resulted in earned time credits. However, as previously discussed, Plaintiff does not have a protected interest earning good time or earned time credits. *See Fogle,* 435 F.3d at 1262.

Finally, while Plaintiff's transfer to BVCF may have been indeterminate, Plaintiff only spent 19 days in solitary confinement. The court finds that this short duration fails to establish a liberty interest as a matter of law. *Gaines v. Stenseng,* 292 F.3d 1222, 1226 (segregation for a period less than seventy-five days could fail as a matter of law to satisfy the "atypical and significant" hardship requirement).

Upon balancing the *DiMarco* factors, the court finds that Plaintiff's allegations fail to establish that he had a liberty interest in avoiding his placement in solitary confinement for nineteen days and subsequent transfer to BVCF. Accordingly, the court finds that Plaintiff fails to state a claim for violations of his Fourteenth Amendment due process rights.

**F.    *Qualified Immunity***

Defendants also argue they are entitled to qualified immunity from Plaintiff's § 1983 claims in their individual capacities. Whether Defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner,* 490 F.3d 810, 813 (10th Cir. 2007). Although qualified immunity is most often raised at the summary judgment stage, the Tenth Circuit has recognized the propriety of raising a qualified immunity defense in a motion to dismiss. *Pueblo Neighborhood*

23

*Health Ctr., Inc. v. Losavio*, 847 F.2d 642, 645-46 (10th Cir. 1988).  *See also Workman v. Jordan*, 958 F.2d 332, 334 n.2 (10th Cir. 1992) (court's review of an assertion of qualified immunity on a Rule 12(b)(6) motion is limited to the pleadings).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry.  First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.  Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted). "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*  Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry.  *Id.*

Having concluded that Plaintiff has failed to state a claim for violations of his First, Eighth and Fourteenth Amendment rights, the court finds that Defendants are entitled to qualified immunity from Plaintiff's § 1983 claims.

## G.    *ADA Claim*

Plaintiff's ADA claim appears to allege that he was terminated from the TC Program on the basis of his disability.  Defendants argue that Plaintiff's ADA claim is properly dismissed because (1) the ADA does not contemplate individual liability and (2) Plaintiff has failed to demonstrate that his termination from the TC Program was based on his disability.  The court agrees with the

former argument, but declines to reach the latter argument because Plaintiff fails to sufficiently allege that he is a qualified individual with a disability.[7]

The court construes Plaintiff's ADA claim as arising under Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also Robertson v. Las Animas Cnty. Sheriff's Dep't*, 50 F. 34d 1185, 1193 (10th Cir. 2007) (Title II of ADA "extends to discrimination against inmates detained in a county jail.").

"The proper defendant in a claim under Title II of the ADA is the public entity itself or an official acting in his or her official capacity on behalf of the public entity." *Nasious v. Colo. - Office of Governor Ritter*, No. 09–cv–01051–REB–KMT, 2011 WL 2601015, at *3 (D. Colo. June 29, 2011) (citing *Everson v. Leis*, 556 F.3d 484, 501 (6th Cir. 2009)). Title II does not provide for suit against an official of a public entity in their individual capacity. *Id.* Therefore, Plaintiff's ADA claim will be dismissed to the extent he seeks to hold Defendants liable in their individual capacities under Title II.

The court thus turns to Plaintiff's ADA claim against Defendants in their official capacities. To establish a claim under Title II of the ADA must allege that (1) he is a qualified individual with a disability (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or

---

[7] Although Defendants have not raised this particular argument, the court may do so *sua sponte* because Plaintiff is proceeding *in forma pauperis.* 28 U.S.C. § 1915(e)(2).

discrimination was by reason of a disability. *Robertson*, 500 F.3d at 1193 (citing 42 U.S.C. §

12132).  A disability within the meaning of the ADA is, *inter alia*, "'a physical or mental

impairment that substantially limits one or more of the major life activities' of an individual." *Id.*

(quoting 42 U.S.C. § 12102(2)(A)).

"[M]ajor life activities include, but are not limited to caring for oneself, performing manual

tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing,

learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. §

12102(2)(A).  "Individuals attempting to prove disability status under this test may not merely rely

on evidence of a medical diagnosis of an impairment."  Robertson, 500 F.3d at 1194.  "Instead, the

ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence

that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is

substantial.'"  *Id.* at 1194 (quoting *Toyota Mfg, Ky, Inc. v. Williams,* 534 U.S. 184, 198 (2002)).

Here, Plaintiff alleges that he has "Anxiety disorder, depressive disorder, [and] P.T.S.D."

(Am. Compl. at 7.)  However, as discussed, the fact that Plaintiff has been diagnosed with these

impairments alone does not establish a disability.  Importantly, Plaintiff does not allege how these

disorders affect his major life activities.  Plaintiff alleges these impairments "cause [him] to

question anyone before allowing anyone to control [him]."  (*Id.*)  However, the court is not

convinced that the ability to comply with authority amounts to a major life activity.

As such, the court finds that Plaintiff's allegation fails to establish that his mental

impairments substantially limit a major life activity.  Accordingly, the court finds that Plaintiff

fails to state a claim for relief under the ADA.

### H.    Leave to Amend

The dismissal of a complaint "pursuant to Rule 12(b)(6)[] is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash.,* 959 F.2d 1062, 1066 (D.C. Cir. 1992).  However, due to heightened concerns when the plaintiff is proceeding *pro se,* a dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts alleged and it would be futile to give him an opportunity to amend." *Oxendine v. Kaplan,* 241 F.3d 1272, 1275 (10th Cir. 2001).  However, "[e]ven as courts are careful to protect the rights of *pro se* plaintiffs, they often find that granting the opportunity to amend would be futile." *Carbajal v. Morrisey,* No. 12-cv-03231-REB-KLM, 2014 WL 1301532, at *36 (D. Colo. Mar. 31, 2014); *see also Arocho v. Nafziger,* 367 F. App'x 942, 955 (10th Cir. 2010) (describing the circumstances in which the plaintiff would be afforded an opportunity to amend his complaint as "unique.").

Here, Plaintiff has already amended his complaint once.  Moreover, the court finds that granting Plaintiff additional leave to amend his complaint would be futile.  Ultimately, upon review of the Amended Complaint, it is clear that Plaintiff simply takes issue with a legitimate decision reached by the Defendants to terminate him from the TC Program.  The court is not convinced that Plaintiff could muster forward additional facts in order to state a claim for relief, much less overcome Defendants' assertion of qualified immunity.  Accordingly, the court declines to afford Plaintiff a further opportunity to amend his complaint.  Further, in light of this conclusion, Plaintiff's Motion to Appoint Counsel will be denied as moot.

Therefore, for the foregoing reasons, it is ORDERED

Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 42) is

GRANTED.  Plaintiff's Amended Complaint (Doc. No. 25) is DISMISSED without prejudice.  It

is further

ORDERED that Plaintiff's Motion to Appoint Counsel (Doc. No. 48) is DENIED as moot.

Dated this 9th day of March, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge